IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRENDAN CURRIE,

                Plaintiff,                          3:13-cv-01515-PK

v.                                         FINDINGS AND
                                         RECOMMENDATION

BRIAN SHAW, d/b/a Klamath Wildlife
Resources,

                Defendant.

_____

PAPAK, Magistrate Judge:

       The matter before the court is plaintiff Brendan Currie's motion for attorneys' fees and

expenses (#19).  For the reasons set forth below, Currie's motion should be granted in part and

denied in part and Currie should be awarded attorneys' fees in the amount of $19,476.53 and

costs in the amount of $610.20.


Page 1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

On August 27, 2013, Currie filed a complaint against his former employer, Brian Shaw,

alleging that Shaw discharged Currie because he invoked the workers' compensation system and

because he reported what he believed to be violations of state or federal law.  On November 18,

2013, the undersigned entered a default order against Shaw after he failed to respond to Currie's

complaint in the time allotted under Federal Rule of Civil Procedure 12.  *See* November 18, 2013

Default Order, #8.  Thereafter, United States District Court Judge Michael H. Simon entered a

default judgment against Shaw in the amount of $300,000.00, plus interest.  *See* February 3, 2014

Default Judgment, #18.  The default judgment further provides: "It is ordered and adjudged that

the plaintiff recover of the defendant . . . his attorney fees and disbursements to be presented in a

cost bill and in a motion for attorney fees within the time allowed by the Federal Rules of Civil

Procedure."  *Id.* at 1-2.  On February 18, 2014, Currie filed the instant motion for attorneys' fees

and expenses, requesting attorneys' fees in the amount of $25,293.00[1] and costs in the amount of

$630.76.  *See* Motion for Attorneys' Fees and Expenses, #19, at 1.

## DISCUSSION

I.      **Attorneys' Fees**

    A.      **Standard**

In general, where the district court exercises its subject-matter jurisdiction over a state-

---

[1]  In the motion for attorneys' fees and expenses, Currie states that he is seeking
"$12,028.50 in attorney fees for lead counsel Marianne Dugan (43.74 hours at $275 per hour)"
and "$13,545 in attorney fees for co-counsel Daniel Bartz (77.4 hours at $175 per hour)," for a
total of $25,573.50.  Motion for Attorneys' Fees and Expenses, #19, at 1.  The billing records
attached to the motion, however, do not support this figure.  Rather, the billing records for Dugan
show that she worked 42.72 hours on the case, not 43.74.

law claim, it should apply state law to the issue of attorneys' fees, so long as state law does not contradict federal law. *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999). In this case, Currie requests attorneys' fees pursuant to Oregon Revised Statute ("ORS") § 659A.885(1), which provides that "the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal" in actions brought pursuant to ORS §§ 659A.040 (discrimination against workers seeking workers' compensation benefits) and 659A.199 (discrimination for whistleblowing).

Under Oregon law, the courts award attorneys' fees following the factors specified in ORS § 20.075. *See McCarthy v. Or. Freeze Dry, Inc.*, 957 P.2d 1200, 1204-05 (Or. 1998). Subsection (1) focuses on factors to consider in determining whether to award fees, although courts must also consider these factors in determining the reasonableness of the requested fees:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
>
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
> (g) The amount that the court has awarded as a prevailing party fee

under ORS [§] 20.190.

      (h) Such other factors as the court may consider appropriate under the circumstances of the case.

ORS § 20.075(1).  Subsection (2) provides additional factors to be considered in determining the

proper amount of fees:

      (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

      (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

      (c) The fee customarily charged in the locality for similar legal services.

      (d) The amount involved in the controversy and the results obtained.

      (e) The time limitations imposed by the client or the circumstances of the case.

      (f) The nature and length of the attorney's professional relationship with the client.

      (g) The experience, reputation and ability of the attorney performing the services.

      (h) Whether the fee of the attorney is fixed or contingent.

ORS § 20.075(2).  Courts assess the reasonableness of the number of attorney hours spent by

examining the time, labor, skill, and difficulty of issues along with the amount involved and the

results obtained.  *Gardner v. Martin*, No. 05-CV-769-HU, 2006 WL 2711777, at *6 (D. Or. Sept.

19, 2006).  Courts determine the reasonable hourly rate by looking to the fee customarily charged

in the locality and the experience, reputation, and ability of the attorney involved.  *Id.*

Page 4 - FINDINGS AND RECOMMENDATION

The opposing party's objections to the fee petition "play an important role in framing any issues that are relevant to the court's decision." *McCarthy*, 957 P.2d at 1208. Even absent objections from the opposing party, as in a default-judgment case, the court has an independent duty to review a fee petition for reasonableness. *See Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992); *Schumacher v. City of Portland*, No. CV-07-601-MO, 2008 WL 219603, at *2 (D. Or. Jan. 23, 2008). The court must provide "a brief description or citation to the factor or factors on which it relies" when granting or denying a fee petition but has no obligation "to make findings on other statutory criteria that play no role in the court's decision." *McCarthy*, 957 P.2d at 1208.

### B.    Analysis

Pursuant to ORS § 20.075, the first step in addressing a fee petition is to determine whether the prevailing party should be awarded attorneys' fees. After considering the factors set forth in ORS § 20.075(1), I find that Currie is entitled to an attorney-fee award. Many of the factors under ORS § 20.075(1) are not relevant in this case because Shaw failed to appear and has been held in default. Of the factors that apply, I note that factor (a) supports Currie. In the complaint, Currie alleges that Shaw, doing business as Klamath Wildlife Resources, contracted with the federal government to climb trees and collect data on red tree voles. Shaw hired Currie as a survey technician and tree climber. During his employment, Currie alleges that Shaw failed to follow safety protocols and falsified survey results. After Currie was injured and after he reported to federal agencies that he believed Shaw was falsifying survey data, Shaw terminated Currie's employment. Given these allegations, I find that Shaw's conduct weighs heavily in favor of awarding attorneys' fees. Moreover, I find that factor (b) supports Currie. Currie filed a

Page 5 - FINDINGS AND RECOMMENDATION

complaint regarding Shaw's conduct with the Bureau of Labor and Industries ("BOLI") and, after conducting an investigation, BOLI determined that there was substantial evidence that Shaw engaged in an unlawful employment practice. Finally, I find that factor (e) also supports Currie. Currie's attorneys acted diligently and reasonably under the circumstances. For instance, when Shaw failed to file an answer within the time allotted under Federal Rule of Civil Procedure 12, Currie's attorneys did not immediately seek a default order but, rather, wrote to Shaw on two occasions warning him of the impending entry of default and giving him a further opportunity to respond to the complaint. In sum, after considering all of the factors under ORS § 20.075(1), I find that Currie should be awarded attorneys' fees.

Having determined that Currie is entitled to fees, the next step is to determine the amount of fees that should be awarded. Again, many of the factors set forth in ORS § 20.075(1) and (2) are not relevant in this case. For instance, there is no evidence that Currie's attorneys were precluded from accepting other cases as a result of their work on Currie's case or that there were time limitations imposed by either Currie or the circumstances of the case. *See* ORS § 20.075(2)(b), (e). Those factors that are most significant to my decision are ORS § 20.075(2)(a) and (d), relating to the time required and the results obtained, and ORS § 20.075(2)(c) and (g), relating to the fee customarily charged in the locality and the experience of the attorneys performing the services.

### 1.    Time and Labor Required and Results Obtained

Currie requests compensation for 42.72 hours of attorney Marianne Dugan's time and 77.4 hours of attorney Daniel Bartz's time. In support of his request, Currie submitted billing records showing the time that Dugan and Bartz spent on specific tasks. Currie notes that his

counsel exercised good "billing judgment" by deducting, for example, "time spent on potentially

duplicative work." Motion for Attorneys' Fees and Expenses, #19, at 2. Moreover, Currie points

to the "excellent results" achieved in the case, noting that he obtained all of the relief that he

requested. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)) (internal quotation mark

omitted).

 After reviewing the billing records, I find that the number of hours expended is largely

reasonable in light of the time and labor required for this type of case and the results achieved. In

hindsight, Currie's attorneys expended unnecessary hours working on, for example, discovery

planning; nevertheless, at the time they completed these tasks, it was not clear that Shaw would

fail to appear and Currie should not be penalized for his attorneys' diligent efforts to move the

case forward.

 Although I find that most of the hours expended were reasonable, the billing records

reveal some instances of inadequate documentation or improperly included time. First, time

entries with vague descriptions, such as "emails with client," "client here," and "emails with co-

counsel Bartz" provide the court with no basis for determining whether the time billed for the

task was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Indeed,

these types of descriptions are almost identical to those that the Message from the Court

Regarding Fee Petitions identifies as inadequate. *See* Message from the Court Regarding Fee

Petitions, http://www.ord.uscourts.gov/index.php/court-policies-517/fee-petitions (last updated

on 02/06/2013). Accordingly, I find it appropriate to deduct 7.72[2] hours of Dugan's time and 4.6[3]

---

 [2] These hours are as follows: 0.3 hours on 5/6/2013; 1.0 hour on 6/5/2013; 0.02 hours on
6/11/2013; 0.06 hours on 6/17/2013; 0.02 hours on 7/2/2013; 1.0 hour on 7/3/2013; 0.5 hours on
7/4/2013; 0.5 hours on 7/5/2013; 0.02 hours on 7/24/2013; 0.75 hours on 8/5/2013; 0.3 hours on

hours of Bartz's time on the basis that such hours are inadequately documented.

Second, I find that the 10.4 hours that Bartz spent on "document review" should be excluded as well. It is not clear what documents Bartz was reviewing. Bartz separately billed for reviewing documents from BOLI and, given that Shaw did not appear and an order for default was entered, it is clear that Bartz was not reviewing discovery documents produced by Shaw. Accordingly, I deduct 10.4[4] hours of Bartz's time as inadequately documented and unreasonable.

Finally, I find that fees should not be awarded for time spent conducting background research. Specifically, Bartz billed 3.0 hours for "note taking on default judgment treatise section" and 1.1 hours for reading an "Atty Fee Barbook." These tasks were clearly undertaken for the purpose of "general education"—that is, they do not relate to any specific or unique issue involved in the case. *Spectrum Produce Distrib., Inc. v. Fresh Mktg., Inc.*, Civil No. 11-06368 (JBS/KMW), 2012 WL 2369367, at *7 (D.N.J. June 20, 2012). I find that it is improper to shift to Shaw fees incurred in conducting such general background research and, accordingly, I deduct

---

8/19/2013; 0.02 hours on 8/26/2013; 0.25 hours on 8/29/2013; 0.12 hours on 9/2/2013; 0.02 hours on 9/3/2013; 0.02 hours on 9/10/2013; 0.02 hours on 9/11/2013; 0.02 hours on 9/13/2013; 0.02 hours on 9/14/2013; 0.1 hours on 9/17/2013; 0.02 hours on 9/18/2013; 1.75 hours on 9/19/2013; 0.75 hours on 10/1/2013; 0.02 hours on 11/21/2013; 0.02 hours on 11/23/2013; and 0.1 hours on 12/15/2013. Although there were other instances of vague billing entries, I was able to determine the nature of the tasks in those entries given the context of the case.

[3] These hours are as follows: 0.6 hours on 9/25/2013; 0.2 hours on 9/26/2013; 0.8 hours on 12/10/2013; 0.1 hours on 12/11/2013; 0.2 hours on 12/12/2013; 0.4 hours on 12/13/2013; 0.1 hours on 12/13/2013; 0.4 hours on 12/16/2013; 1.5 hours on 12/16/2013; and 0.3 hours on 12/17/2013.

[4] These hours are as follows: 1.4 hours on 12/10/2013; 2.2 hours on 12/11/2013; 3.6 hours on 12/12/2013; 2.3 hours on 12/13/2013; and 0.9 hours on 12/17/2013.

4.1[5] hours of Bartz's time on this basis.

In light of the foregoing, I recommend excluding 7.72 hours of Dugan's requested time and 19.1 hours of Bartz's requested time on the grounds that such hours were inadequately documented or otherwise improperly included in the fee petition.

### 2.    Market Rates and Reputation and Ability of Attorneys

It is well settled within the Ninth Circuit and in this District that:

> The prevailing market rate in the community is indicative of a reasonable hourly rate.  The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.

*Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262-63 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895-97 & n.11 (1984)) (footnote omitted) (internal citation omitted).  Here, Currie requests that Dugan's time be compensated at an hourly rate of $275 and Bartz's time be compensated at an hourly rate of $175.

### a.    Rate for Attorney Dugan

In a sworn affidavit, Dugan provides evidence that she has approximately twenty years of experience and has "primarily litigated in federal court, in the areas of civil rights litigation, environmental litigation, employment litigation, and, to a smaller extent, other areas of law." Declaration of Marianne Dugan, #20, ¶ 10.

According to the 2012 Oregon State Bar Economic Survey, which provides useful information as to rates actually charged by Oregon attorneys in 2011, the median hourly rate for

---

[5]  These hours are as follows: 2.6 hours on 10/29/2013; 0.4 hours on 10/30/2013; 0.6 hours on 12/11/2013; and 0.5 hours on 12/12/2013.

legal services charged by Portland-area attorneys with sixteen to twenty years of experience was $250 in 2011, with a 25th percentile rate of $200, a 75th percentile rate of $300, and a 95th percentile rate of $380. As this court has previously recognized, these rates appear to be anomalous. That is, the rates charged by attorneys with thirteen to fifteen years of experience are significantly higher, with a median rate of $300, a 25th percentile rate of $261, a 75th percentile rate of $379, and a 95th percentile rate of $435. Given the anomalous rates for attorneys with sixteen to twenty years of experience, I find that a more accurate means of calculating the market rates for attorneys with sixteen to twenty years of experience is to average the rates charged by attorneys with thirteen to fifteen years of experience and the rates charged by attorneys with twenty-one to thirty years of experience.[6] By this method, the median hourly rate charged by attorneys with sixteen to twenty years of experience would be $316.50, with a 25th percentile rate of $256, a 75th percentile rate of $389, and a 95th percentile rate of $452.50. An appropriate method for adjusting the foregoing rates for inflation in order to estimate the corresponding rates prevalent in the Portland legal community in 2013, when most of this action was litigated, is to multiply the 2011 rates by the consumer price index for urban consumers ("CPI-U") for 2013, then divide the resulting figures by the CPI-U for 2011. I take judicial notice that the United States Department of Labor's Bureau of Labor Statistics has published a CPI-U for the Western states of 227.485 for 2011 and of 235.824 for 2013. On this method, the estimated median hourly rate for legal services charged by Portland-area attorneys with sixteen to twenty years of

---

[6] According to the 2012 Oregon State Bar Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with twenty-one to thirty years of experience was $333 in 2011, with a 25th percentile rate of $251, a 75th percentile rate of $399, and a 95th percentile rate of $470.

Page 10 - FINDINGS AND RECOMMENDATION

experience in 2013 would be $328.10, with an estimated 25th percentile rate of $265.38, an estimated 75th percentile rate of $403.26, and an estimated 95th percentile rate of $469.09.

Here, Dugan's requested hourly rate of $275 falls just above the estimated 25th percentile rate charged by attorneys with sixteen to twenty years of experience. In light of all of the evidence in the record, I find that Dugan's requested hourly rate is reasonable for an attorney of her experience and with her credentials.

### b.    Rate for Attorney Bartz

In a sworn affidavit, Bartz provides evidence that he graduated from law school in December 2010 and was admitted to the Oregon State Bar in October 2011. Declaration of Daniel Bartz, #21, ¶¶ 5-6. Bartz further states that, after graduating from law school, he worked as a law clerk assisting an attorney on a pro bono immigrants' rights case and currently serves as the Vice Chair of the Board of Directors of Disability Rights Oregon. *Id.* ¶¶ 8-9.

According to the 2012 Oregon State Bar Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with zero to three years of experience was $175 in 2011, with a 25th percentile rate of $163, a 75th percentile rate of $198, and a 95th percentile rate of $246. As described above, an appropriate method for adjusting the foregoing rates for inflation in order to estimate the corresponding rates prevalent in the Portland legal community in 2013 is to multiply the 2011 rates by the CPI-U for 2013, then divide the resulting figures by the CPI-U for 2011. On this method, the estimated median hourly rate for legal services charged by Portland-area attorneys with zero to three years of experience in 2013 would be $181.42, with an estimated 25th percentile rate of $168.98, an estimated 75th percentile rate of $205.26, and an estimated 95th percentile rate of $255.02.

Here, Bartz's requested hourly rate of $175 falls between the median and 25th percentile rates charged by attorneys with zero to three years of experience. The record contains no evidence suggesting that Bartz has any expertise or special skill that significantly aided Currie in achieving success. Indeed, the billing records submitted in support of the motion demonstrate that, given his modest experience, Bartz has yet to acquire a level of efficiency justifying the average rate charged by attorneys with zero to three years of experience. Thus, under these circumstances, I find that Bartz's time is properly billed at the 25th percentile rate, or $168.98.

### 3.    Summary

Based on the foregoing, I find that Currie should be compensated for 35.0 hours of Dugan's time at an hourly rate of $275 and 58.3 hours of Bartz's time at an hourly rate of $168.98, for a total attorney-fee award of $19,476.53.

## II.    Costs

Next, Currie requests $630.76 in costs pursuant to Federal Rule of Civil Procedure 54(d). Specifically, Currie requests the following: (1) $400.00 in filing fees; (2) $20.56 in mailing expenses; (3) $210.00 in process-server fees; and (4) $0.20 in Pacer fees.

Federal Rule of Civil Procedure 54(d) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). "Costs" taxable under Rule 54(d) "are limited to those set forth in 28 U.S.C. §§ 1920 and 1821." *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)); *accord Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 176 (9th Cir. 1990). Under 28 U.S.C. § 1920, the court may tax as costs:

Page 12 - FINDINGS AND RECOMMENDATION

(1)    Fees of the clerk and marshal;

(2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)    Fees and disbursements for printing and witnesses;

(4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)    Docket fees under section 1923 of this title;

(6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. "Once a prevailing party establishes that [an] expense is taxable under [28 U.S.C. § 1920]," then the losing party bears the burden of proving why the prevailing party is not entitled to the expense. *Plantronics, Inc. v. Aliph, Inc.*, No. C 09-01714 WHA (LB), 2012 WL 6761576, at *3 (N.D. Cal. Oct. 23, 2012); *see also Jardin v. DATAllegro, Inc.*, No. 08-CV-1462-IEG (WVG), 2011 WL 4835742, at *2 (S.D. Cal. Oct. 12, 2011).

I find that Currie's requests for filing, Pacer, and process-server fees are reasonable and authorized by 28 U.S.C. § 1920. *See* 28 U.S.C. § 1920(1), (4) (listing as a taxable costs "[f]ees of the clerk" and "[f]ees for exemplification and the costs of making copies"); *Alflex Corp.*, 914 F.2d at 178 (holding that "private process servers' fees are property taxed as costs" under 28 U.S.C. § 1920). Mailing fees, however, is not one of the taxable costs listed under 28 U.S.C. § 1920. *See Campista v. Creditors Fin. Grp., LLC*, No. 3:13-cv-00640-SI, 2014 WL 127083, at *5 (D. Or. Jan. 13, 2014) (finding that postage is not a taxable cost); *Kraft v. Arden*, No. CV. 07-487-PK, 2009 WL 73869, at *9 (D. Or. Jan. 8, 2009) (noting that "[c]osts for courier, mail,

telephone, and fax charges are outside the scope of § 1920"). Thus, after deducting the $20.56

requested for mailing expenses, Currie should be awarded $610.20 in costs pursuant to 28 U.S.C.

§ 1920.

## CONCLUSION

Based on the foregoing, Currie's motion for attorneys' fees and expenses (#19) should be

granted in part and denied in part and Currie should be awarded attorneys' fees in the amount of

$19,476.53 and costs in the amount of $610.20.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

Dated this _6th_ day of June, 2014.

Honorable Paul Papak
United States Magistrate Judge